**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

MONEE YOUNG,

       Plaintiff,                                SECOND AMENDED
                                                   COMPLAINT

       -against-

ACHIEVEMENT FIRST, INC.;
ACHIEVEMENT FIRST BUSHWICK           Case No. 7:20-cv-02576-PMH
ELEMENTARY SCHOOL; and
COURTNEY SARETZKY,

       Defendants.

------------------------------------------------------------------x

      Plaintiff Monee Young, by and through undersigned counsel, states the following for her

Second Amended Complaint against Defendants Achievement First Bushwick Elementary School,

Achievement First, Inc., and Courtney Saretzky, on personal knowledge as to her own acts and

observations, and on information and belief as to all other matters.

## THE PARTIES

    1.     Plaintiff Monee Young resides in Bronx, New York, and is a citizen of New York.

She was formerly employed by Defendants as a teacher at Achievement First Bushwick.

    2.     Defendant Achievement First Bushwick Elementary School ("AFBES") is a charter

school operating in Brooklyn, New York.  It is an "education corporation" as defined by the New

York Education Law.  *See* N.Y. Educ. Law §§ 216a[1], 2853[1].  Achievement First Bushwick

Elementary School is believed to be a citizen of New York.

    3.     Defendant Achievement First, Inc., is a Connecticut not-for-profit corporation

which engages in the education business, including the running of schools, and performs support

and oversight functions for AFBES.  Achievement First, Inc., is believed to be a citizen of Connecticut.

4.      Achievement First Bushwick Elementary School and Achievement First, Inc., acted in concert and are referred to together as "Achievement First" in this complaint, unless otherwise specified.

5.      Defendant Courtney Saretzky was the principal of AFBES when Plaintiff Monee Young was employed there, and remains its principal today; she is employed by Achievement First.  Defendant Saretzky made and imposed the decision to terminate Plaintiff's employment, and Saretzy aided and abetted the actions of Achievement First, and acted as an agent of Achievement First in terminating Young; she is accordingly a suable person under the New York City and State Human Rights Laws and 42 U.S.C. §§ 1981 and 1983.  Saretzky resides in the State of New York, and is a citizen of New York.

6.      Defendants acted in one another's interest with respect to Plaintiff, and as one another's agents, such that the acts of one may be imputed to all Defendants.  Unless otherwise specified, the allegations here relate to all Defendants.

## JURISDICTION AND VENUE

7.      Plaintiff Monee Young previously was employed by Defendants.  She was an employee, and Defendants were employers or agents of employers, within the meaning of the New York City Human Rights Law, N.Y.C. Admin Code § 8-107 et seq., and also within the coverage of 42 U.S.C. §§ 1981 and 1983, and N.Y. Exec. Law § 296.

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367, as this case raises one or more claims under federal law, and the remaining state and city law claims

are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.     Defendants may argue that a notice-of-claim was required as to Plaintiff's state and city law claims.  Such a contention would be incorrect.  The notice-of-claim statute does not apply to the claims against Defendant Saretzky, because school principals are not persons entitled to a notice-of-claim.  *See, e.g., Collins v. City of New York*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016). No notice-of-claim was required as to the Achievement First entities. The New York Education Law only requires a notice-of-claim for claims against school districts, certain state-supported schools for the blind and deaf (Education Law Art. 85), and the Henry Viscardi School (Chapter 1060 of the Laws of 1974). Achievement First, Inc., and AFBES are not school districts, state-supported schools for the blind or deaf, or other covered entities.  *See* N.Y. Educ. Law § 3813[1] (specifying entities entitled to notice-of-claim, which do not include "charter schools" or "education corporations"); *New York Charter Sch. Ass'n v. Smith*, 15 N.Y.3d 403, 409–10, 940 N.E.2d 522, 525 (2010) ("[T]he Legislature made clear that charter schools are exempt from all other state and local laws, rules, regulations or policies governing public schools.  When the Legislature intended charter schools to be subject to particular laws governing public entities, it has said so.") (citing N.Y. Educ. Law §§ 2584[1][e], 2854[1][b]).

10.     Regardless, even if a notice-of-claim was required, Plaintiff complied with the requirement.  On July 10, 2017, Plaintiff's counsel corresponded by email with Achievement First's in-house counsel, who requested that correspondence be sent to his Achievement First email address.  After having initial discussions with in-house counsel about the nature of Young's discrimination and retaliation claims, Plaintiff's counsel sent an email to Achievement First's in-house counsel dated August 7, 2017, describing the claims, making a concrete monetary demand

calculated with reference to Young's salary, and expressing that Young intended to sue if the claims were not resolved.  Achievement First then conducted what it termed an investigation into the claims of race discrimination and retaliation, and wrote a letter back to Young's counsel acknowledging the claims, discussing them, denying any liability, and refusing to make payment for the claims.  Achievement First received adequate and timely written notice of the claims, opportunity to resolve the claims pre-suit, and opportunity to investigate the claims, and by its own statement did in fact investigate the claims.  This constitutes compliance with Section 3813[1] to the extent it applies.

11.     This Court has personal jurisdiction over all Defendants as, among other matters, the acts and events giving rise to this action occurred in New York State.

12.     Venue is proper as this action was removed from State Supreme Court in Bronx County, which is within the territory of the Southern District of New York.

## FACTS

13.     Plaintiff Monee Young is a black woman who was born and raised in New York City.

14.     Young received her Bachelor's degree in Sociology from the City College of New York in 2015.

15.     Wanting to make an impact on the community, Young decided to become a teacher.

16.     She applied, and was hired as a teacher in residence by Achievement First on June 29, 2015, by then-principal Stacey Park.

17.     Young was qualified for her position, and performed to any reasonable expectations of her employer.

18.     Achievement First hired Young as a "teacher-in-residence," a training program to train new teachers to become teachers at the school.

19.     But approximately two months into the school year, an English teacher at AFBES quit her job. Achievement First placed Young in charge of second grade English Language Arts ("ELA") because she was the most qualified and prepared of the teachers in residence.

20.     For the duration of the 2015-2016 school year, Young's direct manager was Lisa Weekes, the Dean of Curriculum (at Achievement First, assistant principals are referred to as "Deans").  Weekes is a black woman.

21.     During the 2015-2016 school year, Ms. Young's co-teacher was Netta Evans, a black woman.

22.     Young had a good working relationship with Park, Weekes, and Evans, all of whom were women of color.

23.     In or about April 2016, Achievement First renewed Young's contract for the 2016-2017 school year, a decision that was made and approved by Park.

24.     During the 2015-2016 school year, a group of black faculty members formed and met to discuss issues of racial inclusion at Achievement First.

25.     In June 2016, Park resigned from her position as principal of AFBES.

26.     In August 2016, Achievement First appointed Courtney Saretzky, a white woman originally from Chesapeake, Virginia, to be the principal of the school for the 2016-2017 school year.

27.     For the 2016-2017 school year, Achievement First assigned Casey Hogan, a white Academic Dean, to be Young's direct supervisor.

5

28.     This meant that Young went from having two women of color as her direct supervisor and principal (Weekes and Park, respectively) to having two white women as her direct supervisor and principal (Hogan and Saretzky, respectively).

29.     While she was principal, Saretzky would go to black teachers' classrooms and tell them they were being too loud and needed to quiet down, despite the fact that the black teachers were using appropriate volume.  Saretzky did not make this demand on white teachers.

30.     Both Saretzky and Hogan would talk to black teachers in a condescending manner, as if speaking to a child.  By contrast, they did not speak to white teachers that way.

31.     Once Saretzky was principal, the group of black faculty that had met the previous year was no longer allowed to continue.

32.     AFBES employed predominantly white teachers and administrators, with Weekes and Sade Johnson being the only two people of color in leadership positions.

33.     Young and several of her black coworkers noticed that Saretzky would not greet them in the hallways during work, but would greet white employees.

34.     On Fridays, Achievement First held professional development events in one room with all teachers and staff.  The room was segregated:  black teachers sat on one side and white teachers sat on the other.

35.     Saretzky was noticeably friendlier with white teachers and mingled only with white teachers during these Friday events; she did not mingle with the black employees.

36.     When Saretzky passed Young in the hallways at school, she would not greet Young; she would ignore Young, avert her gaze, and not respond when Young greeted her.

37.     For the 2016-2017 school year, Achievement First kept Young teaching second grade, but assigned her to a new co-teacher, Jessica Thomas. Thomas is Latina; Young does not know Thomas's full heritage, but she does not appear to be of black ancestry.

38.     Almost immediately, Thomas began criticizing Young's teaching methods, questioning and undermining Young's professional judgments, and talking down to Young. Thomas was not Young's superior, and Thomas's actions interfered with Young's job and her ability to teach and connect with students.

39.     From the beginning of the school year, Young sent Hogan emails expressing concern about Thomas's treatment of her.

40.     Young also met with Hogan biweekly for one-on-one meetings, as was customary for all employees and their direct managers.  In these meetings, Young raised her concerns about Thomas's treatment of her to Hogan.

41.     Hogan held meetings with Thomas about these concerns, and Hogan even mediated discussions between both Thomas and Young about their professional disagreements.

42.     During her one-on-one meetings with Young, Hogan would criticize Young and question her truthfulness; Hogan would doubt Young's accounts of incidents and side with Thomas.  Hogan had no factual basis for siding with Thomas over Young, and her conclusions were incorrect.

43.     Dishonesty is a stereotype often deployed against black employees in the workforce.  *See* E. McCrate, *Why Racial Stereotyping Doesn't Just Go Away: The Question of Honesty and Work Ethic*, U. Mass Amherst Political Economy Research Inst. Working Paper Series, No. 115 (2006), available at:

 https://scholarworks.umass.edu/cgi/viewcontent.cgi?article=1091&context=peri_workingpapers

44.     At the beginning of the 2016-2017 school year, Shernice Johnson, a black teacher at AFBES, was having conflicts with her co-teacher, a white woman named Missy.

45.     Saretzky met with Shernice Johnson, accused her of being aggressive, and told her to treat Missy better.

46.     In January 2017, Young had her midyear review meeting with Saretzky. Young received a positive performance review.

47.     During the meeting, and after receiving her positive review, Young expressed her concerns about working with Thomas to Saretzky.

48.     Saretzky did not investigate or follow-up on Young's complaint.

49.     In or around May 2017, Wayne Brown, a black teacher at AFBES, came into Young's classroom and witnessed Thomas speaking disrespectfully to Young.

50.     Young reported the incident to Hogan and Saretzky, and Brown submitted his account of the interaction and corroborated Young's account. This was the first time that another coworker witnessed an incident between Thomas and Young.

51.     Around the same time, Young, Thomas, and Saretzky met to discuss the incident; Thomas was emotional and Saretzky offered that she take a few days off to gather herself. When Young asked to take time off for the same reason, Saretzky denied her request.

52.     On or about May 15, 2017, Young met with Saretzky to discuss the report she made about Thomas that was corroborated by Brown. In this meeting, Saretzky criticized Young's behavior.

53.     In a follow-up email sent on May 19, 2017, Saretzky accused Young of raising her voice, swearing, involving other teachers in her conflicts with Thomas, and involving students in

the conflict.  "Aggressive behavior" or "loud behavior" is also a stereotype often deployed against blacks.

54.     Thomas was not coached or disciplined for her behavior during the incident that Young reported and Brown witnessed.

55.     On June 2, 2017, Young was walking to the Bobcat Cafe (the teachers' lounge) with Elizabeth Powers and Shernice Johnson, two of her coworkers.

56.     As they approached the Bobcat Cafe, Brown came out of his classroom; Young, Powers, Shernice Johnson, and Brown all discussed a matter involving a student who was standing outside Brown's classroom.  Discussing the needs of this student was part of their job.

57.     Sade Johnson, the Dean of Student Culture and Behavior saw the group of teachers and expressed dismay.

58.     Later that day, Sade Johnson expressed to Young that she did not want Powers talking with the student, and clarified that her concern with the gathering of teachers in the hallway was not with Young.

59.     That same day, Young walked down a hallway in the school; she lightly clapped her hands together a few times as she walked down the hallway; it was a personal tic, or a way of fidgeting or dealing with nervous energy.

60.     This gesture was not threatening or physically aggressive; it did not violate any work rules, and was unremarkable and meaningless. It was not directed at anyone.

61.     Defendants had access to a surveillance video showing the supposed gesture, which consists of Young calmly walking down a hallway and clapping her hands together.  No reasonable person would regard this action as a threatening gesture.

62.     Achievement First and Saretzky nonetheless construed this gesture as threatening, and Achievement First and Saretzky took disciplinary action against Young based on that gesture.

63.     On or about June 9, 2017, Saretzky asked to speak with Young in her office after Young had dismissed her students and escorted them to their school bus.

64.     The school had a program providing ice-cream for the teachers after school that day. Young asked Saretzky if she could get her ice cream prior to meeting with Saretzky .

65.     Saretzky snapped at Young and said something to the effect of, "You need to go to my office now!" in an angry tone.

66.     In the meeting, Saretsky and Achievement First terminated Young's employment, stating that Saretzky and Achievement First believed that Young's calmly walking down a hallway and clapping her hands was a threatening, violent gesture.

67.     This reaction reflected false stereotypes about blacks – and in particular here black women - being "angry" and more aggressive than whites.  See, e.g., W. Ashley, *The angry black woman: the impact of pejorative stereotypes on psychotherapy with black women*, Social Work & Public   Health,   2014;   29(1):27-34,   abstract   available   at https://www.ncbi.nlm.nih.gov/pubmed/24188294.

68.     Saretzky acted on behalf of Achievement First in the course and scope of her employment, and the decision to fire Young was under her control.

69.     On information and belief, Achievement First, Inc., provides the human resources functions for AFBES as there is no on-site human resources, and Achievement First, Inc.'s, involvement is necessary in carrying out any termination and contest of unemployment benefits.

70.     When Saretzky told Young she was terminating her, Young said to Saretzky that she believed that Saretzky was engaged in race discrimination.

71.     Saretzky said something to the effect of, "I treat everyone the same," and then told Young that Achievement First would not send her a final paycheck if Young reached out to any AFBES employees following her termination.

72.     This appeared to be an attempt by Saretzky to silence Young and/or punish her economically for stating that Saretzky was discriminating against her.

73.     Achievement First and Saretzky had Young escorted off the premises immediately, marching her out as if she had committed a criminal act.

74.     Achievement First and Saretzky also terminated the employment of two other black teachers at AFBES in early June 2017.

75.     After Achievement First terminated Young, she promptly requested access to graduate school work she had done on her work computer, which she needed for a Masters' degree program she was completing, and that Defendants knew she was completing.

76.     Obtaining this graduate school work and making it available to Young was easy and would not have taken long.

77.     However, Achievement First greatly delayed making this graduate school work belonging to Young available, such that Young was concerned that she might not graduate on time.

78.     Ultimately, Achievement First told her it had deleted her hard-drive and provided her with only part of her graduate school work.

79.     Achievement First's reporting and management process would mean that the request for Young's graduate school work on her computer would have to have been routed to Defendant Saretzky for her decision; it can be reasonably concluded that Saretzky directed the delay in making the graduate school work on Young's computer available.

80.     As a result of Defendants withholding this graduate school work and then only providing part of it, Young had to pursue alternate methods of presenting her academic work, and experienced anxiety and uncertainty from not having graduate school work, and not knowing if she would graduate on time.

81.     Young also applied for New York State unemployment benefits, and Achievement First contested those benefits.

82.     Another black teacher, Akeel Daniel, who was one of the two other black teachers fired at around the same time, also told Saretzky that he felt he was being treated unfairly and that Saretzky had made false accusations against him in order to terminate him; Achievement First likewise contested his unemployment benefits application.

83.     Though Young ultimately obtained unemployment benefits, they were delayed; she had to expend energy and time fighting for the benefits, and worry about the prospect of not having these benefits, to which she is entitled by law.

84.     Young has suffered damages, including loss of pay and fringe benefits and emotional distress, as a result of Defendants' actions.

85.     Defendants acted with willful or wanton negligence, recklessness, and/or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, in that Defendants allowed bias and stereotypes to affect their actions, and after Young complained of bias, they took deliberate retaliatory action against her.

## <u>CLAIMS</u>

**FIRST CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1981**
**Race Discrimination**

86.     Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

87.     Young is black.

88.     Defendants took adverse action against Young, including but not limited to termination of her employment.

89.     Young's race was a but-for cause of Defendants' actions; among other things, Defendants' actions reflected bias, because their perceptions of Young's body language as aggressive (when it was not) reflects false racial stereotypes of blacks as being more physically-aggressive than whites.  Defendants' explanation is pretextual and unworthy of belief because multiple witnesses backed up Young's account of her actions on June 2, 2017, and video footage from Defendants' hallway camera showed Defendants that Young's actions were not aggressive. Further, within approximately one week of Young's termination, Defendants terminated at least two other black teachers, while no white teachers were terminated, at a school where there were already few black teachers, and most teachers were white. As further set forth in this complaint, the background facts of Defendants' treatment of employees shows racially-disparate treatment.

90.     As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including but not limited to loss of pay and emotional distress.

91.     Young prays that the Court find Defendants liable for race discrimination, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. § 1981
### Retaliation

92.     Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

93.     Young engaged in activity protected by 42 U.S.C. § 1981, including but not necessarily limited to the fact that she told Defendants that she believed that the way she was being treated reflected racial bias.

94.     Defendants took adverse action against Young because of her protected activity, ultimately withholding her academic work product, marching her out of the building in a degrading way, and contesting her application for unemployment benefits.

95.     Young's protected activity was a but-for cause of Defendants' actions; among other things, Defendants had not expressed or stated that they had any intention of contesting Young's unemployment benefits before she complained of racial discrimination in her termination meeting. And Defendants had no grounds for doing so:  employers may only contest unemployment benefits for misconduct, and Defendants knew that the actions they relied on in terminating her - i.e., the events of June 2, 2017 - did not constitute misconduct.  Further, it would have been easy and feasible to give Young her academic work product, but Defendants unreasonably delayed doing so without justification.

96.     As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including delayed receipt of benefits and anxiety resulting from the uncertainty over whether she would receive benefits and whether she would graduate timely from her program.

97.     Young prays that this Court find Defendants liable for retaliation, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

**THIRD CAUSE OF ACTION**
**Violation of the New York State Human Rights Law,**
**N.Y. Exec. Law § 296**
**Race Discrimination**

98.     Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

99.     Young is black.

100.    Defendants took adverse action against Young, including but not limited to termination of her employment.

101.    Young's race was a motivating or other causally-sufficient factor in Defendants' actions; among other things, Defendants' actions reflected bias because their perceptions of Young's body language as aggressive (when it was not) reflects false racial stereotypes of blacks as being more physically-aggressive than whites.  Defendants' explanation is pretextual and unworthy of belief because multiple witnesses backed up Young's account of her actions on June 2, 2017, and video footage from Defendants' hallway camera showed Defendants that Young's actions were not aggressive.  Further, within approximately one week of Young's termination, Defendants terminated at least two other black teachers, while no white teachers were terminated, at a school where there were already few black teachers, and most teachers were white. As further set forth in this complaint, the background facts of Defendants' treatment of employees shows racially-disparate treatment.

102.    As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including but not limited to loss of pay and emotional distress.

103.    Young prays that the Court find Defendants liable for race discrimination, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## FOURTH CAUSE OF ACTION
### Violation of the New York State Human Rights Law,
### N.Y. Exec. Law § 296
### Retaliation

104.    Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

105.    Young engaged in activity protected by the New York State Human Rights Law, including but not necessarily limited to the fact that she told Defendants that she believed that the way she was being treated reflected racial bias.

106.    Defendants took adverse action against Young because of her protected activity, ultimately withholding her academic work product, marching her out of the building in a degrading way, and contesting her application for unemployment benefits.

107.    Young's protected activity was a motivating or other causally-sufficient factor in Defendants' actions; among other things, Defendants had not expressed or stated that they had any intention of contesting Young's unemployment benefits before she complained of racial discrimination in her termination meeting.  And Defendants had no grounds for doing so: employers may only contest unemployment benefits for misconduct, and Defendants knew that the actions they relied on in terminating her - i.e., the events of June 2, 2017 - did not constitute misconduct.  Further, it would have been easy and feasible to give Young her academic work product, but Defendants unreasonably delayed doing so without justification.

108.    As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including delayed receipt of benefits and anxiety resulting from the uncertainty over whether she would receive benefits and whether she would graduate timely from her program.

109.    Young prays that this Court find Defendants liable for retaliation, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

**FIFTH CAUSE OF ACTION**
**Violation of the New York City Human Rights Law,**
**N.Y.C. Admin. Code § 8-107 et seq.**
**Race Discrimination**

110.    Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

111.    Young is black.

112.    Defendants took adverse action against Young, including but not limited to termination of her employment.

113.    Young's race was a motivating or other causally-sufficient factor in Defendants' actions; among other things, Defendants' actions reflected bias, because their perceptions of Young's body language as aggressive (when it was not) reflects false racial stereotypes of blacks as being more physically-aggressive than whites.  Defendants' explanation is pretextual and unworthy of belief because multiple witnesses backed up Young's account of her actions on June 2, 2017, and video footage from Defendants' hallway camera showed Defendants that Young's actions were not aggressive.  Further, within approximately one week of Young's termination, Defendants terminated at least two other black teachers, while no white teachers were terminated, at a school where there were already few black teachers, and most teachers were white. As further set forth in this complaint, the background facts of Defendants' treatment of employees shows racially-disparate treatment.

114.    As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including but not limited to loss of pay and emotional distress.

115.    Young prays that the Court find Defendants liable for race discrimination, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## SIXTH CAUSE OF ACTION
### Violation of the New York City Human Rights Law,
### N.Y.C. Admin. Code § 8-107 et seq.
### Retaliation

116.    Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

117.    Young engaged in activity protected by the New York City Human Rights Law, including but not necessarily limited to the fact that she told Defendants that she believed that the way she was being treated reflected racial bias.

118.    Defendants took adverse action against Young because of her protected activity, ultimately withholding her academic work product, marching her out of the building in a degrading way, and contesting her application for unemployment benefits.

119.    Young's protected activity was a motivating or other causally-sufficient factor in Defendants' actions; among other things, Defendants had not expressed or stated that they had any intention of contesting Young's unemployment benefits before she complained of racial discrimination in her termination meeting.  And Defendants had no grounds for doing so: employers may only contest unemployment benefits for misconduct, and Defendants knew that the actions they relied on in terminating her - i.e., the events of June 2, 2017 - did not constitute misconduct.  Further, it would have been easy and feasible to give Young her academic work product, but Defendants unreasonably delayed doing so without justification.

120.    As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including delayed receipt of benefits and anxiety resulting from the uncertainty over whether she would receive benefits and whether she would graduate timely from her program.

121.    Young prays that this Court find Defendants liable for retaliation, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## SEVENTH CAUSE OF ACTION
### Violation of 42 U.S.C. § 1983
### Race Discrimination

122.    Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

123.    To the extent that Defendants allege and/or the Court holds that Defendants were public institutions and/or acted under color of law, they are covered by 42 U.S.C. § 1983, and therefore by the protections against race discrimination and retaliation accorded by Title VII the Civil Rights Act of 1964.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015); 42 U.S.C. § 2000e et seq. (Title VII); Fed. R. Civ. P. 8(d) (permitting alternative and hypothetical pleading).

124.    Young is black.

125.    Defendants took adverse action against Young, including but not limited to termination of her employment.

126.    Young's race was a motivating or other causally-sufficient factor in Defendants' actions; among other things, Defendants' actions reflected bias, because their perceptions of Young's body language as aggressive (when it was not) reflects false racial stereotypes of blacks as being more physically-aggressive than whites.  Defendants' explanation is pretextual and unworthy of belief because multiple witnesses backed up Young's account of her actions on June 2, 2017, and video footage from Defendants' hallway camera showed Defendants that Young's actions were not aggressive.  Further, within approximately one week of Young's termination, Defendants terminated at least two other black teachers, while no white teachers were terminated, at a school where there were already few black teachers, and most teachers were white. As further

set forth in this complaint, the background facts of Defendants' treatment of employees shows racially-disparate treatment.

127.    As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including but not limited to loss of pay and emotional distress.

128.    Young prays that the Court find Defendants liable for race discrimination, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

**EIGHTH CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983**
**Retaliation**

129.    Young incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

130.    To the extent that Defendants allege and/or the Court holds that Defendants were public institutions and/or acted under color of law, they are covered by 42 U.S.C. § 1983, and therefore by the protections against race discrimination and retaliation accorded by Title VII the Civil Rights Act of 1964.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015); 42 U.S.C. § 2000e et seq. (Title VII); Fed. R. Civ. P. 8(d) (permitting alternative and hypothetical pleading).

131.    Young engaged in activity protected by federal law, including but not necessarily limited to the fact that she told Defendants that she believed that the way she was being treated reflected racial bias.

132.    Defendants took adverse action against Young because of her protected activity, ultimately withholding her academic work product, marching her out of the building in a degrading way, and contesting her application for unemployment benefits.

133.   Young's protected activity was a motivating or other causally-sufficient factor in Defendants' actions; among other things, Defendants had not expressed or stated that they had any intention of contesting Young's unemployment benefits before she complained of racial discrimination in her termination meeting.   And Defendants had no grounds for doing so: employers may only contest unemployment benefits for misconduct, and Defendants knew that the actions they relied on in terminating her - i.e., the events of June 2, 2017 - did not constitute misconduct.   Further, it would have been easy and feasible to give Young her academic work product, but Defendants unreasonably delayed doing so without justification.

134.   As a direct and proximate result of Defendants' unlawful actions, Young has sustained damages, including loss of pay and benefits and emotional distress.

135.   Young prays that this Court find Defendants liable for retaliation, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff Monee Young respectfully prays that the Court enter an award in her favor, find that Defendants violated Sections 1981 and 1983 and the New York City and State Human Rights Laws, and grant all relief allowed under law, including but not limited to:

A.   Actual economic damages, including lost wages and benefits, adjusted for promotional opportunities lost;

B.   Actual non-economic damages, including damages for emotional distress;

C.   Punitive damages and civil penalties;

D.   Attorney's fees, expert fees, and costs;

E.      Reinstatement, backpay, and/or frontpay;

F.      An order that Defendants cease and desist from all discriminatory practices and

revise Young's personnel records to remove all negative references; and

G.      Any other and/or further relief permitted by law.

Dated: April 10, 2020                          Respectfully submitted,
       New York, New York
                                               KEENAN & BHATIA, LLC

                                               By:  ___/s E.E. Keenan_____
                                               Edward (E.E.) Keenan
                                               90 Broad Street, Suite 200
                                               New York, NY  10004
                                               Tel:  (917) 975-5278
                                               ee@keenanfirm.com

                                               *Attorney for Plaintiff Monee Young*

## **AFFIRMATION OF SERVICE**

I affirm service of the foregoing by e-filing via CM/ECF, which will automatically transmit notice to all parties of record through their counsel contemporaneous with the date of filing.


By:  ___/s/ E.E. Keenan_____
Attorney for Plaintiff